UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GABRIEL R. ZACCARIA,

                            Plaintiff,

v.                                                  6:98-CV-0183
                                                      (LEK/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                                         OF COUNSEL:

GRANITO & SONDEJ                             THAD F. SONDEJ, ESQ.
*Attorneys for Plaintiff*
890 Seventh North Street
Suite 201
Liverpool, New York 13088

HON. GLENN T. SUDDABY               WILLIAM H. PEASE, ESQ.
United States Attorney for the           Assistant United States Attorney
  Northern District of New York
*Attorney for Defendant*
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[1]

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on July 7, 1994. (Administrative Transcript ("T") at 97.) The application was denied initially and upon

---

[1] This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

reconsideration. (T. at 107, 122). Plaintiff also protectively filed an application for Supplemental Security Income ("SSI") on June 21, 1994. (T at. 126.) This application was also denied initially and upon reconsideration. (T. at 135, 140.) Plaintiff requested a hearing, which was held on May 30, 1995. (T. at 184, 196.) On January 12, 1996, Administrative Law Judge ("ALJ") Franklin T. Russell issued a decision finding that Plaintiff was not disabled and therefore not eligible for DIB or SSI benefits. (T. at 196-200.) On December 1, 1997, the Appeals Council denied Plaintiff's request for review. (T. at 204-205.)

Plaintiff commenced the instant action on February 3, 1998. (Dkt. No. 1.) On July 7, 1998, the parties stipulated to remand the matter, pursuant to the sixth sentence of 42 U.S.C. § 405(g). (Dkt. No. 4.) A supplemental hearing was held on July 26, 1999 (T. at 47-80) and on March 10, 2000, ALJ Russell again found that Plaintiff was not disabled and therefore not eligible for DIB or SSI benefits. (T. at 267-275.) On February 16, 2001, the Appeals Council remanded the matter to "obtain vocational expert evidence to clarify the effect of the assessed limitations on the claimant's occupational base . . . ." (T. at 281.)

A second supplemental hearing, where a vocational expert testified, was held on August 29, 2001. (T. at 81-96.) On September 10, 2001, ALJ Russell found that Plaintiff was not disabled, and therefore was not entitled to DIB or SSI benefits. (T. at 13-19.) ALJ Russell's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on September 9, 2002. (T. at 6-7.)

**B.    ALJ Russell's September 10, 2001 Decision**

On September 10, 2001, ALJ Russell issued a decision finding that Plaintiff was not disabled. (T. at 13-19.) Specifically, the ALJ found, *inter alia*, that Plaintiff did not have a listed

impairment, nor did any of Plaintiff's impairments medically equal one of the listed impairments. (T. at 18.) Furthermore, the ALJ found that Plaintiff's allegations regarding his limitations were not totally credible. (*Id.*) Regarding Plaintiff's residual functional capacity ("RFC"), the ALJ found that plaintiff could walk, but was "reluctant to do so on a continuous basis when he has a flare-up of gout. While he has bilateral hearing loss, he can hear if the room is quiet or can watch lips. Environmentally, he should not work around dangerous machinery, at heights, perform work requiring overhead reaching or looking up or in places where there was exposure to excessive noise or vibration." (*Id.*) Accordingly, the ALJ found that in accordance with his RFC, Plaintiff could perform his past relevant work as a hearing aid specialist. (*Id.*) Finally, the ALJ also found that the combination of Plaintiff's hearing loss and his other impairments (vertigo, gout, and degenerative disc disease) did not prevent Plaintiff from performing his past relevant work. (*Id.*) Thus, the ALJ denied Plaintiff DIB and SSI benefits. (T. at 18-19.)

    **C.**    **The Contentions**

Plaintiff makes the following claims:

(1)    Relying on, *inter alia*, the testimony of the vocational expert at the August 29, 2001 supplemental hearing, the ALJ erred in finding that Plaintiff was capable of performing his past relevant work as a hearing aid specialist. (Dkt. No. 7 at 6-7.) Specifically, Plaintiff argues that the ALJ erroneously relied on the vocational expert's response to a hypothetical which did not include a reference to vertigo, from which Plaintiff alleges he suffers. (*Id.*)

(2)    The ALJ erred in failing to give proper weight to Plaintiff's treating physician, Jon E. Hershkowitz, M.D. (Dkt. No. 7 at 7-8.)

Defendant contends that the ALJ's decision is supported by substantial evidence and thus

must be affirmed.  Dkt. No. 10.

## II.     APPLICABLE LAW

### A.     Evaluation of Disability

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).[2]  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  20 C.F.R. §§ 404.1520, 416.920 (2005). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two,

---

[2]  As of September 25, 2003, revisions were made to certain sections of the Code of Federal Regulations; the revisions, however, have no effect on the outcome of this Report and Recommendation.

> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."
> [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency
> determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe
> enough to render one disabled; if so, the claimant qualifies.  [20
> C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four, at which the
> SSA assesses whether the claimant can do his previous work;
> unless he shows that he cannot, he is determined not to be
> disabled.[]  If the claimant survives the fourth stage, the fifth, and
> final, step requires the SSA to consider so-called "vocational
> factors" (the claimant's age, education, and past work experience),
> and to determine whether the claimant is capable of performing
> other jobs existing in significant numbers in the national
> economy.[]  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f),
> 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

### B.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**III.   THE PLAINTIFF**

Plaintiff was born on October 11, 1942.  (Dkt. No. 7 at 2.)  He has a high school education.  (*Id.*)  Plaintiff's primary prior work experience was as a hearing aid specialist.  (*Id.*)  Plaintiff alleges that he suffers from hearing loss, vertigo, and gout.  (Dkt. No. 7 at 2-3.)

**IV.   DISCUSSION**

At step one of the sequential evaluation of disability, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date.  (T. at 14.)  At step two, the ALJ found that Plaintiff's impairments were severe, but at step three he found that the impairments did not meet or equal any listed impairments.  (*Id.*)  At step four, Plaintiff has the burden of showing that he cannot perform his past work.  *Barnhart v. Thomas*, 540 U.S. at 24-25; *Serrano v. Barnhart*, 2003 WL 22683342, at *11; and *Bush v. Shalala*, 94 F.3d 40, 45 (2d Cir. 1996).  The ALJ found that Plaintiff did not meet his burden.

    **A.   There Is Substantial Evidence to Support the ALJ's Finding That Plaintiff Could Perform His Past Work**

Plaintiff argues that the ALJ erred in finding that Plaintiff was capable of performing his past relevant work.  In doing so, Plaintiff argues that the ALJ erroneously based his finding on the testimony of a vocational expert who testified in response to a hypothetical which did not include a reference to vertigo.  (Dkt. No. 7 at 6.)  Furthermore, in response to a second hypothetical posed by Plaintiff's counsel, which did include a reference to vertigo, the vocational expert testified that the vertigo and its resultant symptoms could be problematic.  Finally, Plaintiff argues that the ALJ erred in discounting the vocational expert's response to the second hypothetical because, according to Plaintiff, there "does indeed exist medical evidence which

7

would support the second hypothetical question that Plaintiff's condition would preclude employment that exists in substantial numbers." (Dkt. No. 7 at 7.)

Defendant counters that there is substantial evidence to support the ALJ's finding that Plaintiff retained the RFC to perform his previous work. (Dkt. No. 10 at 6.) Furthermore, Defendant argues that Plaintiff's complaints of vertigo and its resulting symptoms are "merely unsubstantiated allegations and simply not supported by the medical evidence of record." (Dkt. No. 10 at 9.)

The ALJ found that Plaintiff retained the following RFC: "[t]he claimant can walk, but is reluctant to do so on a continuous basis when he has a flare-up of gout. While he has bilateral hearing loss, he can hear if the room is quiet or can watch lips. Environmentally he should not work around dangerous machinery, at heights, perform work requiring overhead reaching or looking up or in places where there was exposure to excessive noise or vibration." (T. at 18.)

In order to determine whether a claimant can perform his or her past relevant work, the SSA's assessment of a claimant's RFC is compared to the physical and mental demands of the claimant's past relevant work. 20 C.F.R. § 404.1560(b) (2004). If the claimant is found to possess the RFC to perform his or her past relevant work, the SSA "will determine that [the claimant] can do [his or her] past work and [is] not disabled." 20 C.F.R. § 404.1560(b)(3) (2004).

In determining whether a claimant is or is not able to perform his or her past relevant work, the services of a vocational expert may be used. 20 C.F.R. § 404.1560(b)(2) (2004). A vocational expert may offer his expert opinion "in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical

impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." (*Id.*) If the claimant has the RFC to perform his or her past relevant work, the SSA will determine that the claimant is not disabled without consideration as to vocational factors such as age, education, work experience, and whether the past relevant work exists in significant numbers in the national economy. 20 C.F.R. § 404.1562(b)(3) (2004).

There is substantial evidence to support the ALJ's finding that Plaintiff retained the RFC to perform his past relevant work. On September 26, 1994, Richard B. Eales, M.D. reviewed Plaintiff's file and completed an RFC Assessment.[3] (T. at 114-121.) It appears that Dr. Eales did not examine Plaintiff. Dr. Eales opined that Plaintiff could occasionally lift and/or carry up to fifty pounds and frequently lift and/or carry up to twenty-five pounds. (T. at 115.) Furthermore, Dr. Eales stated that Plaintiff could sit, stand, and/or walk (with normal breaks) for a total of six hours in an eight hour workday and had the unlimited ability (other than as described regarding lifting and carrying) to push and/or pull. (*Id.*) Dr. Eales also opined that Plaintiff had no postural limitations (such as climbing, balancing, stooping, kneeling, crouching, or crawling), nor did Plaintiff have any manipulative or visual limitations. (T. at 116-117.) Dr. Eales did note Plaintiff's hearing limitations and also remarked that Plaintiff should avoid concentrated exposure to noise, vibration, and other hazards (such as machinery and heights). (T. at 118.)

Helen M. Waters conducted an audiologic study on July 29, 1994. (T. at 165.) She noted that Plaintiff had bilateral sensorineural hearing loss which was moderate to profound on the

---

[3] This RFC Assessment was also reviewed by another SSA physician, who affirmed Dr. Eales' opinions; the affirming physician's signature, however, is illegible. (T. at 121.)

right side, and severe to profound on the left side. (*Id.*) Ms. Waters recommended that Plaintiff use ear protection if he was exposed to high intensity noise, and that Plaintiff receive preferential seating in difficult listening situations, so that he might be able to "speech read." (*Id.*)

At a July 20, 1994 appointment with his treating physician, Jon E. Hershkowitz, M.D., Plaintiff was diagnosed with, among other things, gout and hearing loss. (T. at 172.) There was no mention of vertigo in Dr. Hershkowitz's July 20 notes. On October 20, 1994, Plaintiff complained of lightheadedness. (T. at 208.) Plaintiff claimed he was treated for this ten years ago, but not since. (*Id.*) Dr. Hershkowitz diagnosed Plaintiff with "probable vertigo" and prescribed Antevert. (*Id.*) In a form completed on October 27, 1994, Dr. Hershkowitz diagnosed Plaintiff with "neuronal hearing loss; gout (controlled); vertigo" and opined that Plaintiff could not continue his usual work, could not perform other work,[4] and should not climb, bend, lift, and carry. (T. at 183, 186.) Furthermore, high working speeds, working outside, sudden temperature changes, and high places were working conditions which could adversely affect Plaintiff. (*Id.*)

Dr. Hershkowitz completed an RFC Assessment of Plaintiff on June 6, 1995 and opined that Plaintiff's ability to lift and/or carry, stand, walk, and sit was not affected by his impairments. (T. at 189-190.) However, Dr. Hershkowitz stated that Plaintiff could never climb or balance and could only occasionally stoop, crouch, kneel, and crawl. (T. at 190.) Plaintiff's ability to reach, handle, feel, push/pull, and see was not affected, but his hearing was affected by his bilateral neuronal hearing loss. (T. at 191.) Furthermore, Plaintiff's vertigo and hearing loss caused environmental restrictions such as heights, moving machinery, temperature extremes,

---

[4] The form asks the physician, "[i]n your opinion can applicant continue usual work?" to which Dr. Hershkowitz answered in the negative; the form goes on to ask "[o]ther work?" to which he also answered no. (T. at 183, 186.)

10

noise, and vibration.  (*Id.*)

On June 9, 1995, Plaintiff stated that with regard to his vertigo, "it is essentially stable and somewhat better and he feels that the Meclizine is providing him relief."  (T. at 211.)  Dr. Hershkowitz noted that Plaintiff's "vertigo/bilateral hearing loss – controlled for present time on current medications."  (*Id.*)  At a September 26, 1995 appointment with Dr. Hershkowitz, Plaintiff said that his wife was concerned with his ongoing vertigo.  (T. at 212.)  However, according to Plaintiff, "three days prior to todays [sic] appointment he has felt well and for the most part, symptom free."  (T. at 212.)  Although the medication for his vertigo caused some fatigue, Plaintiff did not want to meet with an ears, nose, and throat physician ("ENT") to consider any surgical options.  (*Id.*)

On April 23, 1998, Ayesha Aziz, M.D.[5] noted that Plaintiff had a history of, *inter alia*, gout and vertigo and further noted that "[h]e has learned to deal with his vertigo and uses Antevert as needed also."  (T. at 248.)  Dr. Aziz stated that Plaintiff's problems were "currently stable."  (*Id.*)  Plaintiff was seen by Abha Gupta, M.D. on January 13, 1999 and she noted that Plaintiff's gout, hearing loss, and vertigo were stable.  (T. at 251.)  At a July 12, 1999 appointment, Plaintiff complained to Dr. Gupta that his vertigo had been "acting up more than usual."  (T. at 294.)  Dr. Gupta directed Plaintiff to continue his medication and told him to follow up in three months.  (T. at 294-295)  On October 25, 1999, Plaintiff told Dr. Gupta that his vertigo was "somewhat controlled" as a result of the medication.  (T. at 296.)  At a January 3,

---

[5] Plaintiff was treated at Syracuse Community Health Center and the Court surmises Dr. Hershkowitz left the Center and Plaintiff was subsequently treated by other doctors including Drs. Aziz and Gupta.  This is evidenced by Dr. Aziz's remark that "[t]his is a follow-up visit for this patient who used to see Dr. Hershkowitz."  (T. at 248.)

2000 follow up appointment, Plaintiff complained of flare ups of vertigo. (T. at 297.) Dr. Gupta noted "[a]ll prescriptions done. Follow up with me in six months." (*Id.*) At an April 19, 2000 appointment, Plaintiff complained that his vertigo was worse. (T. at 298.) Dr. Gupta continued Plaintiff's medication and noted that Plaintiff again did not want to see an ENT specialist. (T. at 298-299.) Plaintiff had an annual examination on April 27, 2001 and Dr. Gupta noted his history of vertigo and that Plaintiff was nonetheless able to perform his activities of daily living and prescribed continued symptomatic treatment. (T. at 300.)

The medical evidence set forth above supports the ALJ's finding regarding Plaintiff's RFC. The restrictions and limitations recommended by Plaintiff's physicians are consistent with the ALJ's finding. Most importantly, the ALJ's finding regarding Plaintiff's RFC is consistent with his past relevant work, as described by Plaintiff himself. At his July 26, 1999 hearing, Plaintiff described his duties as a hearing aid specialist. (T. at 53.) In addition, Plaintiff completed a vocational report on July 7, 1994, in which he listed and described his prior work experience. (T. at 148-159.) Plaintiff's job duties included conducting hearing tests, making ear impressions, preparing weekly reports, and selecting the correct circuits for hearing aids. (T. at 53, 152.) Plaintiff also stated that during a typical day, he walked and stood for two hours per day, sat for six hours per day, never bent, and never lifted and carried anything. (T. at 152.)

The ALJ found that Plaintiff should not work around dangerous machinery, at heights, or perform work requiring overhead reaching, looking up, or in places where there was excessive noise or vibration. (T. at 18.) Pursuant to Plaintiff's own testimony, his past relevant work did not subject him to such conditions. In fact, Plaintiff's past relevant work generally corresponds with his RFC; from Plaintiff's own description of his previous work, he did not work at heights,

around dangerous machinery, or around excessive noise or vibration. Because there is substantial evidence to support the ALJ's finding regarding Plaintiff's RFC, and because his RFC generally corresponds to the requirements of his previous work, there is substantial evidence to support the ALJ's finding.

Plaintiff also argues that the hypothetical question posed by the ALJ to the vocational expert at the August 29, 2001 hearing did not present the full extent of Plaintiff's impairments, namely his vertigo and its resulting symptoms. (Dkt. No. 7 at 6.) Defendant argues that Plaintiff's allegations regarding vertigo are unsubstantiated and, furthermore, the evidence shows that Plaintiff's vertigo was stable and controlled by medication. (Dkt. No. 10 at 8-9.)

A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983). A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony. *De Leon v. Secretary of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984) and *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996). The Second Circuit has stated that there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." *Dumas*, 712 F.2d at 1554.

The medical evidence set forth above shows that the hypothetical posed by the ALJ, which did not include a reference to vertigo, properly presented Plaintiff's impairments. *See Bosmond v. Apfel*, Civ. No. 97-4109, 1998 WL 851508, at * 7-*8 (S.D.N.Y. Dec. 8, 1998) (the Court held that the hypothetical question posed to the vocational expert was not flawed as a

13

result of the ALJ's failure to include the plaintiff's allegations of, among other things, leg problems because the Court held that there was no objective medical evidence before the ALJ demonstrating leg problems); *see also Martin v. Shalala*, Civ. No. 93-898S, 1995 WL 222059, at *12 (W.D.N.Y. Mar. 20, 1995) (the Court found that the plaintiff's allegations of his symptoms regarding fatigue and his visual limitations were not entirely credible in light of the medical evidence and were not supported by substantial evidence, thus the hypothetical questions posed to the vocational expert did not need to include a restriction regarding resting for at least three hours during the work day). Notably, on September 26, 1995, Plaintiff told Dr. Hershkowitz that with regard to his vertigo, he was feeling well and, for the most part, symptom free. (T. at 212.) Dr. Aziz also noted that Plaintiff "has learned to deal with his vertigo" and takes medication when needed. (T. at 248.) Despite Plaintiff's complaints that his vertigo was getting worse, he did not want to see an ENT specialist. (T. at 299.) In addition, Dr. Gupta (whom Plaintiff testified had been treating him "for everything" and saw him a few weeks prior to the hearing) noted that even though Plaintiff experienced vertigo, he was able to perform his daily living activities. (T. at 57, 300.) In addition, Plaintiff testified, at his hearing, that he still cooked, shopped, occasionally drove to the store, and watched television; furthermore, he was able to take care of his own personal needs. (T. at 67-70.)

Accordingly, there is substantial evidence contained in the record to support the ALJ's hypothetical, even though it did not include a reference to vertigo.

### B. The ALJ Properly Evaluated the Opinions of Dr. Hershkowitz, a Treating Physician

Plaintiff argues that the ALJ erred in not giving proper weight to the opinion of Plaintiff's

treating physician that Plaintiff could not "continue usual work," nor could Plaintiff continue "other work."[6] (Dkt. No. 7 at 7-8; T. at 183.) Defendant argues that the ALJ considered Dr. Hershkowitz's statement and properly found it to be inconsistent with other evidence in the record. (Dkt. No. 10 at 11.)

The medical opinions of a treating physician are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2005); *see also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) and *Torregrosa v. Barnhart*, Civ. No. 03-5275, 2004 WL 1905371, at * 4 (E.D.N.Y. Aug. 27, 2004). The Second Circuit has made clear that "the other substantial evidence in [the] record" may include "the opinions of other medical experts." *Halloran v. Barnhart*, 362 F.3d at 32 (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

In this case, the ALJ considered Dr. Hershkowitz's opinion in determining Plaintiff's RFC, and found the doctor's opinions to be inconsistent with other evidence of record. (T. at 16.) There is substantial evidence to support this finding. For example, Dr. Hershkowitz's opinion that Plaintiff could not perform his usual or other work (T. at 183, 186) is inconsistent with Plaintiff's own statements that his vertigo was "essentially stable and somewhat better" and that he "felt well and for the most part, symptom free." (T. at 211, 212.) Furthermore, Dr. Aziz stated that Plaintiff's "multiple problems" were "currently stable" and that he had learned to deal with his vertigo. (T. at 248.) This assessment of Plaintiff's symptoms was also shared by Dr.

---

[6] The Court notes that the form that appears at page 183 is a copy of the form that appears at page 186. It is unclear whether page 187 is a second page of the form; if it is, a copy of it does not follow the form at page 183.

Gupta. (T. at 251.) Plaintiff also testified, and Dr. Gupta noted, that Plaintiff was able to perform his activities of daily living and take care of his own personal needs. (T. at 67-70, 300.) Furthermore, Dr. Hershkowitz's opinion that Plaintiff could not perform his usual or other work is inconsistent with the opinions of Dr. Eales. (T. at 114-121.)

Also notable is the fact that in his RFC Assessment,[7] when asked whether there were any other work-related activities that were affected by Plaintiff's impairments, Dr. Hershkowitz wrote, "[a]s above. Anything involving persistant [sic] balance/height. Pt also should not drive." (T. at 192, emphasis in original.) Dr. Hershkowitz did not state that Plaintiff could not work at all; instead, he set forth restrictions (which were consistent with the ALJ's finding regarding Plaintiff's RFC) and added that Plaintiff should not drive. Accordingly, there is substantial evidence to support the ALJ's finding that Dr. Hershkowitz's statements are inconsistent with other evidence contained in the record.

Finally, Plaintiff argues that a treating physician's opinion should be "binding upon the Secretary absent substantial evidence to the contrary." (Dkt. No. 7 at 7.) Plaintiff contends that in this case, the "substantial evidence to the contrary" is the vocational expert's response to the ALJ's hypothetical which did not include a reference to vertigo. (*Id.*) Plaintiff goes on to argue that the vocational expert's response to the hypothetical which included a reference to vertigo (that "it would be difficult for Plaintiff to work on a realistic basis") supports the testimony of Dr. Hershkowitz, especially since a significant number of employers would not afford Plaintiff the "unique" special accommodations provided by his former employer. (Dkt. No. 7 at 7-8.) Thus,

---

[7] The form in which Dr. Hershkowitz stated that Plaintiff could not perform his usual or other work predates the RFC Assessment completed on June 6, 1995. (T. at 183, 186, 189-192.)

Plaintiff reasons, there is not a significant number of jobs in the national economy, as required by 20 C.F.R. § 404.1566. (Dkt. No.7 at 8.)

It is not necessary to address these arguments because, as stated above, there is substantial evidence to support the ALJ's hypothetical which did not include a reference to vertigo. Furthermore, there is substantial evidence to support the ALJ's finding that Plaintiff could perform his past work. As such, Plaintiff's "vocational factors of age, education and work experience or whether [a claimant's] past relevant work exists in significant numbers in the national economy" are not considered. 20 C.F.R. § 404.1560(b)(3). Because there is substantial evidence to support the ALJ's finding that Plaintiff could perform his past relevant work, Plaintiff is found to be not disabled without further inquiry.[8] *Id.*

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

---

[8] To the extent that Plaintiff argues that he is disabled because hearing aid specialist positions with the "unique" special accommodations provided by his former employer do not exist, this argument is unavailing. Plaintiff's burden is to show that he cannot return to his previous work, not simply to a specific former job. *See Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981) ("[A]ppellant's burden was to show an inability to return to her 'previous work' as a cashier, not simply to her former job as a 'supermarket cashier.'").

72, 6(a), 6(e).

Dated: August 26, 2005
      Syracuse, New York

                                          George H. Lowe
                                          United States Magistrate Judge